# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LINDA SKYE W., | Case No.  4:20-CV-00382-DCN-REP |
| Plaintiff, | **REPORT AND RECOMMENDATION RE: PETITION FOR REVIEW** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Pending is Petitioner Linda Skye W.'s Petition for Review (Dkt. 1) and an accompanying Memorandum of Law in support of the Petition for Review (Dkt. 22) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a woman in her fifties with a history of autoimmune disorders, including ankylosing spondylitis, Crohn's disease, and primary sclerosis cholangitis.  AR[2] 15-16. In the fall of 2017, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI") alleging a disability onset

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 17).

**REPORT AND RECOMMENDATION - 1**

date of April 7, 2017.  AR 13.  The claim was denied initially and on reconsideration and

Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On June 11,

2019, the claim went to a hearing before Administrative Law Judge ("ALJ") David Willis.  *Id.*

On August 14, 2019, the ALJ issued a decision that was unfavorable to Petitioner.  AR 10-23.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's

request for review, making the ALJ's decision the final decision of the Commissioner of Social

Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises

two points of error.  First, Petitioner maintains that the ALJ erred when he rejected the opinions

of Petitioner's treating rheumatologist, Dr. Craig D. Scoville, in favor of the agency doctors'

opinions about how Petitioner's ankylosing spondylitis and Crohn's disease impact her physical

and mental functioning.  Pt.'s Br. at 10 (Dkt. 2).  Second, Petitioner argues that the ALJ

improperly adopted an RFC that included limitations that the ALJ "made up out of whole cloth."

*Id.* at 16.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

**REPORT AND RECOMMENDATION - 2**

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**REPORT AND RECOMMENDATION - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**REPORT AND RECOMMENDATION - 4**

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: ankylosing spondylitis, inflammatory bowel disease, degenerative disc disease, and Crohn's disease.  AR 15. The ALJ determined that these impairments affected Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner cannot climb ropes or

**REPORT AND RECOMMENDATION - 5**

scaffolds and would be off-task 10% of the time in an eight-hour workday and would be absent up to one day per month for health-related reasons.  AR 18.  Despite these limitations, the ALJ found that Petitioner could perform a range of light work and could return to her past work as a mortgage loan processor and mortgage loan underwriter.  AR 22.  The ALJ, therefore, found that Petitioner was not disabled.  *Id.*

## DISCUSSION

I.   The Medical Opinion Evidence

   a.   *Dr. Scoville's Treatment Records and Medical Source Statement*

Petitioner's first challenge on appeal is to the ALJ's evaluation of the opinions of her rheumatologist, Dr. Craig Scoville.  Dr. Scoville treated Petitioner for many years, beginning before her disability onset date, when Petitioner was still working as a senior mortgage compliance officer, and continuing throughout the period of alleged disability.  AR 47, 342-354, 1140-1148, 1199-1207, 1210-1215.  According to these records, the primary focus of Dr. Scoville's treatment was Petitioner's chronic ankylosing spondylitis and associated back pain. AR 342-354, 1140-1148, 1199-1207, 1210-1215.

Ankylosing spondylitis is a type of arthritis that causes inflammation, pain, stiffness, and reduced flexibility in the spine.  *See* The Basics on Ankylosing Spondylitis, National Institutes of Health, National Institute of Arthritis and Musculoskeletal and Skin Diseases, available at https://www.niams.nih.gov/health-topics/ankylosing-spondylitis (last accessed December 7, 2021).  Symptoms of the disease vary from person to person.  *Id.*  According to the National Institutes of Health, "[m]any people with ankylosing spondylitis have mild episodes of back pain and stiffness that come and go[,] [b]ut others have severe, ongoing back pain and stiffness."  *Id.*

**REPORT AND RECOMMENDATION - 6**

Here, both when Petitioner was working and after she retired, Dr. Scoville described Petitioner's ankylosing spondylitis as involving "low grade disease activity" with "low grade" or "mild" mid-lower lumbar through thoracic/cervical spondylitis, "low grade" bilateral sacroiliitis, and "low grade" arthralgia of selective joints of the hands and wrists.  AR  354-355, 351, 349, 346, 343, 1147, 1144, 1205-1206, 1202-1203, 1200, 1211-1212.

Consistent with these findings, from 2016-2019, Petitioner reported morning stiffness in her back that generally resolved within a few hours.  AR 345, 342, 1146, 1143, 1205, 1202, 1199.  Petitioner also reported ongoing pain in her back, neck, hands, and sometimes hips or shoulders with her pain averaging between 1-3 on a scale of 1-10.  AR 354 (pain averaging 1-2/10 around June 16, 2016, with pain of 0-1/10 immediately after Petitioner's regular Humira injection and pain of 3/10 immediately before the next injection); AR 351 (pain averaging 1-2/10 around October 4, 2016); AR 348 (pain better with medication change, averaging 1/10 around December 28, 2016); AR 345 (pain average of 1-2/10 on May 9, 2017, about a month after Petitioner's disability onset date); AR 342 (pain average of 1-2/10 on September 14, 2017); AR 1146 (pain average of 2/10 on January 24, 2018, Petitioner's first visit after applying for disability benefits); AR 1143 (pain average of 2-3/10 on April 30, 2018); AR 1205 (pain average of 1.5/10 on September 6, 2018, with flare ups of pain that "don't come very often"); AR 1202 (pain average of 2/10 on January 15, 2019); AR 1199 (pain average of 2-3/10 on April 15, 2019 with Petitioner reporting that her disease "has been well controlled").  Finally, Dr. Scoville's physical exams of Petitioner regularly revealed a slightly tender spine and a slightly or mildly tender sacroiliac area.  AR 352, 355, 349, 346, 343, 1147, 1144, 1205, 1202, 1199, 1211.

**REPORT AND RECOMMENDATION - 7**

Based on these findings and reports, Dr. Scoville consistently concluded that Petitioner's disease was being moderately controlled by medications.[3]  AR 354, 351, 346, 343, 1147, 1144, 1205, 1202, 1199, 1211.

On May 8, 2019, over two years after her alleged disability onset date, Petitioner met with Dr. Scoville and asked him to fill out disability paperwork on her behalf.  AR 1210.  During this visit, Petitioner reported morning stiffness that resolved within a few hours, and pain levels averaging 3.5/10.  AR 1210.  Petitioner told Dr. Scoville that "although she [was] improved in terms of her arthritis with [medication]," she had been thinking about her condition and believed that "working [had] become too difficult for her."  *Id.*  Dr. Scoville reviewed Petitioner's symptoms and conducted a physical exam.  AR 1210-1211.  As with all of Dr. Scoville's previous evaluations, this examination revealed that Petitioner had a slightly tender back, low grade arthralgia, low grade spondylitis, and slight-mild sacroiliitis.  AR 1211.

That same day, Dr. Scoville completed a medical source statement documenting his opinions about Petitioner's physical functioning.  AR 1208-1209.  In this statement, Dr. Scoville rated Petitioner's pain level as moderate.  AR 1208.  As it relates to her functioning, however, Dr. Scoville documented relatively severe limitations.  For example, Dr. Scoville stated that Petitioner's ankylosing spondylitis and Crohn's disease would limit her to sitting, standing, and walking only occasionally; allow her to use her hands for fine manipulation only occasionally

---

[3] Throughout her treatment history, Petitioner occasionally reported negative side-effects from her medications.  For example, on January 24, 2018, Petitioner reported that she could not take her full dose of tizanidine because it caused drowsiness and burning of her eyes.  AR 1146.  Dr. Scoville stopped this medication and replaced it with another.  *Id.*  Later that spring, Petitioner started a trial of gabapentin, but complained it was causing her brain fog. AR 1143.  When lowering the dose did not resolve the issue (AR 1140, 1202, 1199), Dr. Scoville eventually directed Petitioner to stop the gabapentin on May 8, 2019.  AR 1210.  That same visit, Dr. Scoville started Petitioner on a buprenorphine patch for her chronic pain.  AR 1212.

and for gross manipulation infrequently; and cause her to need to lie down for 15 minutes every

one to two hours.  AR 1208-1209.  In addition, Dr. Scoville indicated that Petitioner would be

off task 40% of a normal workday due to pain and could be expected to miss more than five days

a work per month due to her medical conditions.  AR 1208.

Dr. Scoville noted that these restrictions could be expected to last 12 months or longer,

but that he also anticipated that it was possible for Petitioner's condition to get better.  AR 1209.

In order to stress this point, Dr. Scoville wrote a post-script at the bottom of the form reiterating

that he hoped to see "further improvement" in Petitioner's condition with "adjustment of

treatment" and promising to reevaluate Petitioner in three to six months.  *Id.*

The ALJ found Dr. Scoville's medical source statement unpersuasive.  AR 21.  The ALJ

instead credited the opinions of the agency doctors in finding that Petitioner's ankylosing

spondylitis did not prevent her from a range of light work, including her former work in the

mortgage compliance industry.  *Id.*

> b.  *The Standard for Evaluating Medical Opinions*

On January 18, 2017, the Social Security Administration published comprehensive

revisions to its regulations governing the evaluation of medical evidence.  *See* 82 Fed. Reg.

5844.  These amendments apply to claims, such as Petitioner's, that are filed on or after March

27, 2017.  *See* 20 C.F.R. § 404.1520c.

Under the newly revised regulations, the framework an ALJ uses for evaluating medical

source opinions is substantially different than it used to be.  Most notably, the old regulations

embraced a hierarchy for evaluating medical opinions depending on the nature of the treatment

relationship.  20 C.F.R. § 404.1527(c).  Within this hierarchy, the opinions of treating physicians

generally were given more weight than the opinions of examining physicians, and the opinions

of examining physicians generally were afforded more weight than the opinions of non-examining, reviewing physicians.  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  The new regulations discard this pyramid of escalating deference, which was customarily known as the treating source or treating physician rule.  *See* 20 C.F.R. § 404.1520c (eliminating the use of the term "treating source").  Instead, the new regulations set forth one uniform standard for evaluating all medical source opinions.  *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

The lynchpin of this new standard is "persuasiveness."  20 C.F.R. § 404.1520c(a).  When determining what medical opinions to credit, an ALJ evaluates how persuasive each medical opinion is by considering: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The factor of supportability looks inward at a medical opinions' bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2).

**REPORT AND RECOMMENDATION - 10**

The ALJ is only required to articulate findings on the remining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).  Furthermore, an ALJ may address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 404.1520c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

The parties agree in part and disagree in part about whether the new regulations displace preexisting case law.  First, Petitioner concedes that the new regulations supplant and replace the treating source rules and cases, which required ALJs to give greater intrinsic weight to treating and examining doctors.  Pt.'s Rply at 3 (Dkt. 27) (agreeing that there is "no longer any inherent extra weight that is automatically given to treating doctors").  The undersigned agrees.  *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion"); *see also Agans v. Saul*, No. 2:20-CV-00508 AC, 2021 WL 1388610, at *5–7 (E.D. Cal. Apr. 13, 2021) (finding that the new regulations are entitled to *Chevron* deference and that they displace the contrary, and pre-existing case law); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-CV-00217-EPG, 2021 WL 1721692, at *2–5 (E.D. Cal. Apr. 30, 2021) (same).

Petitioner maintains, however, that ALJs must continue to follow case law requiring them to provide "specific and legitimate" reasons for discounting the contradicted opinions of medical providers.  Pt.'s Rply at 3-4 (Dkt. 27).  Respondent contends that these cases are no longer controlling.  Res.'s Br. at 8 (Dkt. 23).

**REPORT AND RECOMMENDATION - 11**

It remains to be seen how the Ninth Circuit will resolve such disputes.  The undersigned agrees with Respondent that the genesis of the "specific and legitimate" reasons standard provides a strong basis for questioning the continued applicability of these standards to the new regulations.  This standard originally emerged from case law requiring ALJs to give "greater weight to the opinions of treating physicians."  *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983) (agreeing that treating physicians are entitled to greater weight and reasoning that an ALJ may not disregard their opinions, therefore, without providing "specific, legitimate reasons for doing so."); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight.") (internal citations and quotations omitted).  Because this hierarchy no longer controls, it is reasonable to conclude standard of review must have altered accordingly.

It is not clear, however, that the updated standard of review Respondent proposes is meaningfully different than expanding the "specific and legitimate" reasons standard to apply equally to all medical opinions (i.e., with no heightened rationale required to justify the rejection of a treating doctor's opinion) as Petitioner *appears* to be requesting.  Respondent rightly acknowledges that, when complying with the new regulations, (i) an ALJ must still provide appropriate reasons explaining why he found a particular medical opinion persuasive or unpersuasive and (ii) whatever justification an ALJ does provide must be reasonable and supported by substantial evidence.  Res.'s Br. at 8-11 (Dkt. 23).  In other words, it is undisputed

**REPORT AND RECOMMENDATION - 12**

that an ALJ's decision must continue to satisfy metrics of both articulation and validity to survive review.

Distilling these requirements into a precise test is not necessary to resolve this appeal. For the reasons outlined below, the ALJ's treatment of the opinions of Dr. Scoville survives review under either Petitioner's modified "specific and legitimate" reasons standard or under Respondent's appropriate rationale and substantial evidence test.

### c.   The ALJ's Evaluation of Dr. Scoville's Opinions

The ALJ provided three, logically distinct reasons for finding Dr. Scoville's medical source statement unpersuasive: (1) the statement was inconsistent with Dr. Scoville's own examinations and medical records, which showed that Petitioner had normal muscle strength, normal sensation, and relatively low pain levels, (2) the "extensive" limitations Dr. Scoville endorsed were inconsistent with Petitioner's reported activities, and (3) the physical examinations of other providers did not support Dr. Scoville's findings.  AR 21.  These reasons appropriately focused on the supportability and consistency of Dr. Scoville's opinions as required by 20 C.F.R. § 404.1520c(b)(2).  In addition, the ALJ's reasoning was supported by substantial evidence.

### i.   The ALJ reasonably concluded that Dr. Scoville's medical source statement reflected more severe limitations than his treatment records.

The first reason the ALJ gave for rejecting Dr. Scoville's opinions was the disconnect between these opinions and Dr. Scoville's treatment records.  AR 21.  To support this conclusion, the ALJ cited to the records for all but two of Petitioner's visits with Dr. Scoville between 2016 and 2019.  *Id.* (citing AR 342-361, 1199-1207, and 1210-1215).  In summarizing these records, the ALJ emphasized that:

**REPORT AND RECOMMENDATION - 13**

- Petitioner's ankylosing spondylitis was characterized by stiffness and soreness in her low back, neck, and shoulders, with Petitioner's neck and shoulder pain worsening over the day and her back stiffness resolving within two to three hours of the morning.  AR 19-20.

- During the years she was treated by Dr. Scoville, Petitioner received "moderate benefit" from prescription pain medication, including definite improvement after switching from Humira to a combination of other medications. AR 20.

- In September 2017, after the disability onset date, Petitioner told Dr. Scoville her pain level was 1-2/10.  *Id.*

- Dr. Scoville's examinations showed that Petitioner had a normal gait; normal motor strength and sensation in her extremities; good range of motion in her hands, wrists, elbows, shoulders, knees, ankles, and feet; and mildly decreased range of motion in the hips with mild stiffness in the low back.  *Id.*

- A functional joint assessment in May 2019 showed no synovitis or tenderness.  *Id.*

The ALJ concluded that these records did not align with Dr. Scoville's medical source statement. AR 21.  As the ALJ saw it, Dr. Scoville's examinations did not show muscle weakness, lack of sensation, or other objective physical issues that would explain the extensive postural, manipulative, and lifting limitations Dr. Scoville endorsed.  *Id.*  This would seem to suggest that Petitioner's limitations were caused not by structural problems or weakness, but by chronic pain. As the ALJ correctly stressed, however, Petitioner regularly rated her pain with low numbers. For example, during a visit in September 2017, Petitioner rated her pain as a 1-2/10.  AR 21.

**REPORT AND RECOMMENDATION - 14**

Strikingly, Petitioner never discusses this portion of the ALJ's opinion or of Dr. Scoville's records.[4]  This is a fatal flaw in Petitioner's argument.  Taken as a whole, Dr. Scoville's records and Petitioner's testimony clearly indicate that Petitioner's primary source of impairment is chronic pain and stiffness, primarily in her back and neck.  AR 38, 1210-1212.  In assessing the persuasiveness of Dr. Scoville's opinions, therefore, the ALJ reasonably considered Petitioner's pain ratings.  Critically, these pain ratings indicate that Petitioner's pain was, at its highest, a 3.5/10.  AR 1210.  But this was only one visit.  As the representative visit selected by the ALJ shows, Petitioner's pain was generally even lower.  During the period of alleged disability, Petitioner most often rated her pain somewhere between one and two out of ten.  AR 345, 342, 1146, 1205, 1202, 1199.

The ALJ acted well within reason in concluding that this level of pain does not accord the debilitating limitations Dr. Scoville outlined in his medical source statement.  For example, one would not expect someone with a pain level of 1-2/10 to be off-task 40% of the day due to pain. *Compare* AR 345, 342, 1146, 1205, 1202, 1199 *with* AR 1208.  Similarly, it is hard to understand why someone with normal range of motion, normal strength, and normal sensation and a relatively low pain level would only be able to infrequently lift her arms over her shoulders and only infrequently grasp things with her hands.  *Compare* AR 20 *with* AR 1208.

The parts of Dr. Scoville's records that Petitioner highlights do not compel a contrary conclusion.  Petitioner emphasizes that she was regularly complaining of pain related to her ankylosing spondylitis during the period of alleged disability.  Pt.'s Br. at 12 (Dkt. 22).  Petitioner also cites to one record where she told Dr. Scoville that her Crohn's was active.  *Id.* at

---

[4] Throughout her several page summary of Dr. Scoville's records, Petitioner never once mentions her low pain ratings.  *See generally* Pt.'s Br. (Dkt. 22).

**REPORT AND RECOMMENDATION - 15**

13.  But these facts alone do not show that Petitioner was disabled in the ways Dr. Scoville claimed.  As the ALJ pointed out, Petitioner had both ankylosing spondylitis and Crohn's for years before the alleged disability onset date, long before Petitioner stopped working.  AR 19-20; *see also* AR 523 (indicating that Petitioner was first diagnosed with ankylosing spondylitis in 1988).  The question facing the ALJ was whether these conditions had progressed to a debilitating level after Petitioner elected to accept a buyout and retire.  AR 19

Dr. Scoville's treatment records simply do not support, let alone compel, the conclusion that the answer to this question was yes.  As Petitioner's own summary of Dr. Scoville's records indicates, Petitioner reported or demonstrated similar symptoms – pain throughout her spine and "mild" or "slight" tenderness in her spine and sacroiliac areas – both before and after she left work.  Pt.'s Br. at 12-14 (Dkt. 22) (describing Petitioner's symptoms from 2016-2019).  To the extent these symptoms were worsening, Petitioner was still only reporting "soreness" and "discomfort," but not extreme or severe pain during the period of alleged disability.  *Id.*; *see also* AR 345, 342, 1146, 1143, 1205, 1202, 1199, 1210.  In these circumstances, the undersigned cannot conclude that the ALJ's reading of Dr. Scoville's treatment records as more consistent with the opinions of the agency doctors than the opinions of Dr. Scoville was unreasonable, irrational, or unsupported by substantial evidence.

ii.  <u>Petitioner's reported activities were another legitimate reason for the ALJ to reject Dr. Scoville's opinions.</u>

The second reason the ALJ provided for rejecting Dr. Scoville's opinions was the inconsistency between these opinions and Petitioner's reported activities.  AR 21.  It is well-settled that such a conflict may be a specific and legitimate reason for refusing to accept a treating physician's opinions.  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020); *Ghanim*, 763 F.3d at 1162.

**REPORT AND RECOMMENDATION - 16**

Here, the ALJ found that Petitioner's activity level as a whole conflicted with Dr. Scoville's opinion that she had such severe pain she could only occasionally sit, stand, and walk, could only infrequently stoop and climb, could only occasionally lift 6-10 pounds, could only infrequently engage in gross manipulation using her hands, and would be off task 40% of a work-day due to pain. AR 21. The activities the ALJ identified as inconsistent with this level of pain included: Petitioner maintaining a garden and regularly weeding for 20 minutes at a time; driving around town without issue; traveling with her husband in an RV for weekend trips; attending monthly board meetings; going horseback riding; going 4-wheeling; cooking full meals; doing housework, including laundry and dishes; tending to her personal care; and reading and using a computer. AR 19, 21.

Petitioner has not shown that the ALJ's interpretation of the evidence was unreasonable. Driving, horseback riding, 4-wheeling, cooking, and gardening are all activities that require the ability to use one's hands for gross manipulation. *See* Occupational Requirements Survey, United States Bureau of Labor Statistics, available at https://www.bls.gov/ors/factsheet/gross-and-fine-manipulation.htm (last accessed December 7, 2021) (defining gross manipulation as "seizing, holding, grasping, turning, or otherwise working with [one's] hands," including, for example, "truck drivers operating steering wheels and gear shifts"); *see also Everson v. Colvin*, 577 F. App'x 743 (9th Cir. 2014) (unpublished) (the claimant's ability to drive and groom herself contracted her claim to have a limited ability to use her hands for fine or gross manipulation). Petitioner's ability and willingness to continue engaging in these activities indicates she is not limited to using her hands "very little if at all on some days" as Dr. Scoville indicated. AR 1208.

**REPORT AND RECOMMENDATION - 17**

Similarly, driving, horseback riding, 4-wheeling, and cooking full meals are activities that typically require at least moderate focus and concentration to engage in safely.  It was not unreasonable, consequently, for the ALJ view these activities as inconsistent with Dr. Scoville's belief that Petitioner would be off-task 40% of the time due to pain.  Petitioner's acknowledgment that there are days where she reads for hours further supports this conclusion. AR 278.

Finally, aside from the more direct conflicts, the ALJ reasonably concluded that Petitioner's activities taken as a whole are indicative of someone with greater functioning that Dr. Scoville reported.  *See Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).  Specifically, Petitioner's pain was not so great that it prevented her from participating in a range of taxing physical and mental activities, such as washing laundry, cooking, gardening, attending monthly board meetings, traveling, reading for hours, and enjoying vigorous hobbies like horseback riding.  Petitioner's argument that these activities do not definitively prove she can work amounts to a request that the Court reweigh the evidence and elevate Petitioner's preferred reading of the record over the ALJ's reasoned decision.  Where the ALJ's interpretation of a claimant's activities is rational, however, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interoperation more favorable" to the claimant."  *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).  That is exactly the case here.

**REPORT AND RECOMMENDATION - 18**

iii.   <u>The ALJ did not err in finding that the physical examinations conducted by other providers did not reveal extensive postural, manipulative, lifting, or exertional limitations.</u>

The final reason the ALJ gave for rejecting Dr. Scoville's opinions was the physical examinations of other providers, which all showed normal gait and strength.  AR 21.  The ALJ cited two examples to support this conclusion.  These records both showed that Petitioner was in no distress at the time of the examination, had normal neck range of motion, and normal gait and normal strength in her extremities.  AR 379, 526.  The examinations are dated April 19, 2017 and June 19, 2017, shortly after Petitioner's disability onset date.  *Id.*  While these examinations may not have been sufficient reason standing alone to reject Dr. Scoville's opinions, they were not irrelevant or unreasonable for the ALJ to consider.  These examinations confirmed that Petitioner was not showing high pain levels or other physiological issues around the time she became disabled that would explain the extensive limitations Dr. Scoville later endorsed.  These examinations, along with Dr. Scoville's own records and Petitioner's reported activities provided legitimate grounds for the ALJ to elect to credit the agency doctors' views about Petitioner's functioning over Dr. Scoville's much more dire medical source statement.

iv.   <u>The ALJ did not ignore any significant, probative evidence in making the above findings.</u>

Before disallowing a claimant's application for disability benefits, an ALJ must address and explain the ALJ's rejection of any "significant probative evidence."  *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (the Secretary may not reject "significant probative evidence" without explanation).[5]  Petitioner argues that the ALJ violated this principle by failing to discuss

---

[5] Unlike Petitioner, the undersigned does not read Respondent's brief as arguing otherwise.  *But cf.* Pt.'s Reply at 3 (Dkt. 27).  Respondent never asks the Court to bless findings that are unsupported by substantial evidence or overlook an ALJ's silent rejection of important evidence.  *See generally* Res.'s Br. (Dkt. 23).  Rather, Respondent contends that the ALJ in this case

the records of Dr. Scoville and other treatment providers in sufficient detail.  Pt.'s Br. at 15 (Dkt. 22).

This argument is groundless.  The ALJ spent several paragraphs summarizing the medical evidence regarding Petitioner's ankylosing spondylitis, degenerative spinal changes, Crohn's disease, and irritable bowel syndrome.  AR 19-20.  While the ALJ did not discuss every single visit with every single doctor, this is not required.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (when interpreting the record, the ALJ does not need to "discuss every piece of evidence"); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not expected to "draft dissertations when denying benefits").

Critically, Petitioner has not shown that the ALJ's summary was unfair or inaccurate. Nor could she.  The records Petitioner stresses confirm that Petitioner's primary sclerosing cholangitis was not causing her any problems during the period of alleged disability, her Crohn's Disease was often in remission or asymptomatic, and while she was experiencing ongoing back pain due to her ankylosing spondylitis, this pain was not extreme or severe.  Pt.'s Br. at 3-7, 13-14 (Dkt. 22).  For example, at various times throughout 2017-2018, Petitioner told doctors that she was "okay," that her pain remained at a "usual" level, and that she was "not too bad."  *Id.*  In addition, as the ALJ noted, in April of 2019, Petitioner told her primary care doctor that she had been doing well over the last six months and that her ankylosing spondylitis was under control. AR 20 (citing AR 1193).  The undersigned agrees with Respondent that the ALJ fairly and

---

"thoroughly analyzed the medical records," "carefully" considered Dr. Scoville's opinions, and gave valid reasons supported by substantial evidence for rejecting Dr. Scoville's conclusions.  *Id.* at 8-11.

**REPORT AND RECOMMENDATION - 20**

thoroughly considered the medical evidence when deciding whether Dr. Scoville or the agency doctors' opinions were more persuasive.

II.  <u>The Crafting of the RFC</u>

Petitioner's final argument on appeal is that the ALJ erred in incorporating limitations into the RFC that represented a compromise between Dr. Scoville's opinions and the views of the agency doctors.  Pt.'s Br. at 16-17 (Dkt. 22).  The thrust of Petitioner's argument is that an ALJ may not craft RFC limitations by synthesizing the medical opinions, but must instead formulate the RFC exclusively using a combination of the limitations endorsed by the medical experts.  Petitioner has not identified any Ninth Circuit appellate authority to support this position.  This is not surprising.  Petitioner's argument runs counter to the well-settled principle that it is the responsibility of the ALJ to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC."  *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).  In accordance with this principle, at least one other circuit has explicitly rejected the argument Petitioner advances here.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (rebuffing the suggestions "that the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion").  The undersigned agrees.

The ALJ provided legitimate reasons supported by substantial evidence for crediting the opinions of the agency doctors over Dr. Scoville.  The ALJ's decision to partially conciliate these findings by including additional restrictions in the RFC that favor Petitioner is not a ground for reversing the ALJ's otherwise reasonable decision.

**REPORT AND RECOMMENDATION - 21**

## <u>RECOMMENDATION</u>

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Petitioner's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: December 07, 2021

Raymond E. Patricco
U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 22**